IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

vs.                                                                          Nos.   1:18-cr-00553-JCH-LF
                                                                                        1:20-cv-00570-JCH-LF

ALFONSO NAVARRETE,

        Defendant/Movant.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Alfonso Navarrete's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, filed on June 11, 2020.  Cr. Doc. 55; Civ. Doc. 1.[1]  The United States filed its response to the motion on December 14, 2020.  Civ. Doc. 13. Navarrete filed his reply on March 18, 2021, Civ. Doc. 18, and the United States filed a surreply on April 15, 2021, Civ. Doc. 21.  The Honorable Judith C. Herrera referred this case to me to recommend to the Court an ultimate disposition of the case.  Civ. Doc. 14.  Having reviewed the submissions of the parties and the relevant law, I recommend that the Court deny Navarrete's motion.[2]

## I.     Background Facts and Procedural Posture

On June 22, 2017, a criminal complaint was filed against Navarrete accusing him of possession of child pornography, in violation of 18. U.S.C. §§ 2252(a)(4)(B) and (b)(2), and

---

[1] Citations to "Cr. Doc." are to the document number in the criminal case, case number 1:18-cr-00553-JCH-LF.  Citations to "Civ. Doc." Are to the document number in the civil case, case number 1:20-cv-00570-JCH-LF.

[2] Because the motion and record conclusively establish that Navarrete is not entitled to relief, an evidentiary hearing is unnecessary.  28 U.S.C. § 2255(b); *United States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013).

2252A(a)(5)(B) and (b)(2).  Cr. Doc. 1.  He was arrested the same day.  Cr. Doc. 6.  Several

times after his arrest, Navarrete waived his right to have his case presented to the grand jury

promptly so that he could receive pre-indictment discovery and engage in pre-indictment plea

negotiations.  *See, e.g.*, Cr. Docs. 12, 15, 21, 23, 26.

Nearly eight months later, on February 7, 2018, after having engaged in oral discussions,

the government made two different written plea offers to Navarrete.  Civ. Doc. 13-1.  The first

offer was that the government would agree to a Federal Rule of Criminal Procedure 11(c)(1)(C)

plea agreement that would bind both the government and Navarrete to a 20-year sentence, should

the Court accept it.  *See id.*  The second proposal was a Rule 11(c)(1)(B) agreement in which

Navarrete could ask for any sentence within the statutory range—including a 15-year sentence,

and the government would agree to recommend a sentence within the guidelines range, whatever

that turned out to be.  *See id.*  The prosecutor provided a non-binding estimate that the guideline

range would be 235 to 293 months in prison, which amounted to 19.5 years to nearly 25 years in

prison.  *See id.*  The prosecutor explicitly stated that "this estimate is not binding because this is

only how I anticipate that the guidelines will turn out."  *Id.*  She explained that with the second

offer, Navarrete

> would have to absorb more risk due to the uncertainty of the final guideline
> calculation.  But in exchange, [Navarrete] would be able to request a lower
> sentence than [the] previously requested sentence of 20 years.  If my guideline
> analysis is correct, then the government would, in effect, be limited to requesting
> a sentence of 293 months.

*Id.*  The prosecutor stated that Navarrete would have to enter a guilty plea by the end of the week

to avoid having his case presented to the grand jury.  *See id.*  The prosecutor further stated that

an indictment did not necessarily mean that she would not negotiate further, but she could not

make any promises as to whether the current offer would still be available post-indictment.  *See*

*id.*

Fifteen days later, on February 22, 2018, Navarrete pled guilty to a three-count information.  *See* Cr. Docs. 28, 29, 31, 32.  Count 1 of the information charged Navarrete with engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. §§ 2423(c) and (f).  Cr. Doc. 28 at 1.  Count 2 charged him with production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a), (e), and 2256.  *Id.* at 1–2.  Count 3 charged him with possession or access with intent to view visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2256.  *Id.* at 2.  In the plea agreement, the United States agreed pursuant to FED. R. CRIM. P. 11(c)(1)(B) to recommend a sentence within Navarrete's sentencing guideline range, and also agreed that he should receive a downward adjustment for acceptance of responsibility.  Cr. Doc. 31 at 7.  Both the United States and Navarrete reserved "their rights to assert any position or argument with respect to the sentence to be imposed, including . . . departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a)."  *Id.* at 8.  Navarrete agreed to waive his right to collaterally attack his convictions and any sentence the district court imposed, pursuant to 28 U.S.C. § 2255, "except on the issue of defense counsel's ineffective assistance."  *Id.* at 12–13.  The plea agreement also made clear that "[t]here have been no promises from anyone as to what sentence the Court will impose," and Navarrete represented that he was pleading guilty because he was in fact guilty.  *Id.* at 13.

The calculation of Navarrete's sentencing guideline range was complicated.  *See* Cr. Doc. 35 ¶¶ 31–72, 107.  The probation officer who prepared Navarrete's presentence report ("PSR") determined that Navarrete's total offense level was 43, and his criminal history category was I,

resulting in a guideline imprisonment range of life.[3]  *Id.* ¶ 107.  But because the statutorily authorized sentences were less than the maximum of the applicable guideline range, the guideline range became 960 months, or 80 years.  *Id.*  This guideline range was based on the provision that the Court should order that the sentences be served consecutively, not concurrently, because "the count carrying the highest statutory maximum [wa]s less than the total punishment."  *See* USSG § 5G1.2(d)[4]; Cr. Doc. 35 ¶¶ 106, 107.

Navarrete informally objected to the determination in the PSR that the maximum sentence was 960 months.  *See* Cr. Doc. 45 at 1.  Navarrete contended that the statutory maximum sentence was 360 months.  *See id.*  The probation officer maintained her position that the statutory maximum sentence was 960 months, relying on an application note to USSG § 5G1.2, which provides that "the court shall determine the total punishment (*i.e.*, the combined length of the sentences to be imposed) . . . ."  *See* Cr. Doc. 45 at 2 (citing USSG § 5G1.2, comment. (n.3(A)).

Navarrete filed a sentencing memorandum in which he asked the Court to sentence him to concurrent sentences on the three counts, which would result in a potential statutory range of

---

[3] The 2016 Guidelines Manual was used to calculate Navarrete's sentencing guideline range.  Cr. Doc. 35 ¶ 31.  This PF&RD refers to the 2016 Guidelines Manual unless otherwise noted.

[4] The commentary to this section provides:

> Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count.  The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence.  If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment.

USSG § 5G1.2, comment. (n.1).

imprisonment of 15 to 30 years.  Cr. Doc. 47 at 5.  He also objected to the two-level

enhancement for obstruction of justice.  *Id.* at 5–6.  He further asked the court to vary downward

from the advisory guideline range to a 15-year sentence, *see id.* at 9–16, which was the minimum

mandatory statutory sentence on count 2 of the information, *see* Cr. Doc. 35 at 1.  In response,

the United States acknowledged that the obstruction of justice enhancement might not be

justified.  Cr. Doc. 49 at 1.  It also did not oppose a variance, but it did not agree to a 15-year

sentence.  *Id.* at 2–3.  The United States asked the Court to sentence Navarrete to somewhere

within the range of 25 to 30 years.  *Id.* at 2–3.

  At sentencing, the Court sustained the objection to the obstruction of justice

enhancement, Civ. Doc. 13-4 at 10,[5] but did not recalculate the guideline range at the conclusion

of the sentencing hearing, *see id.* at 46.[6]  The Court also agreed with the parties that a variance

was warranted, and that the sentences imposed should run concurrently, not consecutively.  *See*

*id.* at 37.  The Court stated that it was not in agreement with a 15-year sentence, but it did agree

with a 25-year sentence.  *Id.*  The Court imposed a sentence of 25 years on counts 1 and 2, and a

20-year sentence on count 3, to run concurrently, followed by a lifetime of supervised release.

*See id.* at 48–49.

---

[5] The document number on Document 13-4 is obliterated, but Document 13-4 is Exhibit 4 to the
United States' response to Navarrete's motion, and is the transcript of the June 6, 2019,
sentencing hearing.

[6] Although the Court did not recalculate the guideline range, it appears that the obstruction
enhancement made no difference.  *See* Civ. Doc. 13-4 at 9 (prosecutor states that the obstruction
"enhancement . . . was applied for Court 4, so ultimately I don't think it is going to affect the
final guideline calculation").  Navarrete still would have received a half Unit for a Count Group
4 adjusted offense level of 32, which would have brought the total number of Units to 2.5 rather
than 3.  *See* Cr. Doc. 35 ¶¶ 62–64.  As a result, his offense level for the number of Units assigned
still would have been increased by 3 levels.  *See* USSG § 3D1.4 (directing that the offense level
be increased 3 levels for 2.5 to 3 units).  Thus, the Court correctly determined that the guideline
range of imprisonment was 960 months, or 80 years.  Civ. Doc. 13-4 at 46.

The Court entered the judgment reflecting this sentence on June 7, 2019.  Doc. 52.  On

June 11, 2020, Navarrete timely filed his Motion to Vacate and Correct Sentence Under 28

U.S.C. § 2255.  *See* Cr. Doc. 55; Civ. Doc. 1.

**II.**     **Navarrete's Claims and the Government's Response**

Navarrete raises four issues in his motion:  (1) ineffective assistance of counsel; (2)

application of unconstitutional sentencing enhancements; (3) judicial misconduct; and (4)

unconstitutional application of 18 U.S.C. § 2251(a) and the commerce clause.  Civ. Doc. 1 at 4–

8.  In response, the government argues that Navarrete waived his right to collaterally attack his

sentence on every issue except ineffective assistance of counsel and judicial misconduct.  Civ.

Doc. 13 at 15–16.  The government also argues that Navarrete cannot show that his counsel's

performance was ineffective, or that the judge engaged in misconduct.  *Id.* at 8–15, 17.

**III.**     **Discussion**

A.     Grounds 2 and 4:  Navarrete Waived his Right to Collaterally Attack his
       Convictions and Sentence Under 28 U.S.C. § 2255.

In his second ground for relief, Navarrete claims that "[a]ll sentencing P.S.I [presentence

investigation] enhancements are 'elements of the offense' and are Court determined by

Defendant['s] plea or jury conviction only.  These rights were denied."  Civ. Doc. 1 at 5.  In his

fourth ground for relief, Navarrete claims that he was subjected to the "[u]nlawful application of

18 U.S.C. § 2251(a) [and the] unconstitutional application of [the] 'Interstate Commerce

Clause.'"  *Id.* at 8.  These claims are precluded by Navarrete's collateral attack waiver in his plea

agreement.

A defendant's waiver of the right to collateral attack his or her convictions and sentence

in a plea agreement is generally enforceable.  *United States v. Cockerham*, 237 F.3d 1179, 1181–

83 (10th Cir. 2001).  When a defendant waives the right to collaterally attack his or her sentence

in a plea agreement but later files a motion pursuant to 28 U.S.C. § 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his or her right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights)); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights").

### 1. *Within the Scope of the Waiver*

In this case, there can be no dispute that Navarrete's Ground 2 and Ground 4 claims fall squarely within the scope of the waiver. The plea agreement states, "the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." Cr. Doc. 31 at 12–13. Navarrete's Ground 2 and Ground 4 claims are collateral attacks on both his convictions and the sentence imposed, brought pursuant to 28 U.S.C. § 2255, and have nothing to do with an allegation that his counsel was ineffective. *See generally* Civ. Doc. 1 at 5, 8; Civ. Doc. 18 at 21–23, 25–28. These two claims therefore fall within the scope of the waiver.

### 2. *Knowing and Voluntary*

In his reply, Navarrete claims that his plea was not knowing and voluntary because his attorney did not explain to him that he could be sentenced to consecutive sentences, and had he known that, he would have accepted the Rule 11(c)(1)(C) plea offer which provided for a 240-month sentence. Civ. Doc. 18 at 30, 31, 38–39. He also suggests that he just said what his

lawyer told him to say at his change of plea hearing.  *See id.* at 29–30.  He further asserts that the government breached the plea agreement by requesting a 30-year sentence, *id.* at 31, and that the magistrate judge made an error during the plea colloquy, *id.* at 32.  None of these claims show that Navarrete's collateral attack waiver was unknowing or involuntary.

To determine whether a waiver of collateral review is knowing and voluntary, the Court looks primarily at two factors:  (1) whether the plea agreement itself states that the defendant entered the agreement knowingly and voluntarily, and (2) whether there was an adequate colloquy under Rule 11 of the Federal Rules of Criminal Procedure.  *See Hahn*, 359 F.3d at 1325.  The plea agreement and plea colloquy here demonstrate that Navarrete knowingly and voluntarily waived his right to collateral review.  The plea agreement itself clearly stated the nature of the waiver.  Cr. Doc. 31 at 12–13.  Further, Navarrete "agree[d] and represent[ed] that this plea of guilty is freely and voluntarily made and is not the result of force, threats or promises (other than the promises set forth in this plea agreement and any addenda)."  *Id.* at 13.  He also affirmed that "[t]here have been no representations or promises from *anyone* as to what sentence the Court will impose."  *Id.* (emphasis added).  At the end of his plea agreement, he represented:

> I have carefully discussed every part of this agreement with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, or the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

*Id.* at 15.  Navarrete's attorney represented that he had "carefully discussed every part of this agreement with [his] client," that he had "fully advised [his] client . . . of the relevant Sentencing Guidelines provisions," and that to his knowledge, Navarrete's "decision to enter into this agreement is an informed and voluntary one."  *Id.*

The plea agreement itself correctly advised Navarrete that the first count to which he was pleading guilty provided for a maximum sentence of 30 years in prison, and count 2 had a

minimum mandatory sentence of 15 years and a maximum of 30 years.  *Id.* at 2.  The third count

provided for a maximum sentence of 20 years in prison.  *Id.* at 3.  The plea agreement made clear

that the government did not agree to any particular sentence although it agreed to recommend a

sentence within "Defendant's calculated guideline range."  *Id.* at 7.  Aside from the agreements

specified in the plea agreement, both parties "reserve[d] their rights to assert any position or

argument with respect to the sentence imposed, including but not limited to the applicability of

particular sentencing guidelines, adjustments under the guidelines, departures or variances from

the guidelines, and the application of factors in 18 U.S.C. § 3553(a)."  *Id.* at 8.  The plea

agreement also made clear that the Court could "reach[ ] an advisory guideline sentence different

than expected by the Defendant," and also that the Court could vary from the advisory guideline

range.  *Id.*  "In other words, regardless of any of the parties' recommendations, the Defendant's

final sentence is solely within the discretion of the Court."  *Id.*  The plea agreement further made

clear that it was "a complete statement of the agreement in this case and [could] not be altered

unless done so in writing and signed by all parties."  *Id.* at 14.  Navarrete also specifically

admitted in his plea agreement—under penalty of perjury—as to the specific facts that made him

guilty of each of the three offenses to which he pled guilty.  *Id.* at 6–7.

At his change of plea hearing, Navarrete testified that he was not "under the influence of

any alcohol, drugs or medications," nor was he "suffering from any illness, whether physical or

mental."  Civ. Doc. 13-2 at 5.  The Court made sure that Navarrete had read the information to

which he was pleading guilty and that he understood the charges against him.  *Id.* at 8–9.  The

Court also had the prosecutor recite the minimum and maximum statutory penalties that he was

facing on each of the three counts in the information, and Navarrete testified that he understood

what those penalties were.  *Id.* at 9–10.  Navarrete confirmed that he had read his plea agreement

from "beginning to end," that he had gone over it in detail with his attorney, that his attorney had answered all his questions to his satisfaction, and that he was confident that he understood every term of his plea agreement. *Id.* at 10–11. The Court made sure that Navarrete understood that the "recommendations" in the plea agreement were not binding on the District Judge, and that the District Judge, after considering the Sentencing Guidelines, could impose a sentence that was harsher that what Navarrete or his attorney was expecting or hoping for. *See id.* at 11–13. Navarrete testified that he had had enough time with his attorney to discuss his case, that he had gone over the evidence against him with his attorney, that he and his attorney had talked about possible defenses, and that he was "completely satisfied" with his attorney's advice and representation. *Id.* at 13–14. The Court also made sure that Navarrete understood the appellate waiver in his plea agreement, and that he was willing to give up those rights. *Id.* at 14.

The Court also went over the factual basis contained in the plea agreement, making sure that Navarrete had read "every word" of the factual basis and that he had been given the opportunity to correct anything that was inaccurate. *Id.* at 15. Navarrete testified that the factual basis accurately described what he did that made him guilty of the three crimes to which he was pleading guilty, and he agreed that the government would be able to prove those facts beyond a reasonable doubt. *Id.* at 15–16. He also testified that he was pleading guilty because he was, in fact, guilty, and that no one was forcing him or threatening him to get him to plead guilty. *Id.* at 16–17.

Navarrete then pled guilty to the three counts in the information. *Id.* at 17–18. The magistrate judge accepted Navarrete's plea, finding that Navarrete was "competent and capable of entering an informed plea," that he was "aware of the nature of the charges against [him] and

the consequences of [his] plea," and that his guilty plea was "knowing and voluntary and supported by sufficient facts." *Id.* at 18.

Based on this evidence, I find that Navarrete knowingly and voluntarily waived his right to collaterally attack his conviction and sentence. Navarrete's after-the-fact allegation that he only pled guilty pursuant to this plea agreement because he did not understand that the Court could order that his sentences be served consecutively is not believable. The plea agreement itself and the prosecutor during the plea colloquy accurately stated the potential penalties with respect to each count, which—added together—amounted to a total of 80 years. Furthermore, the Tenth Circuit has held that a "district court's failure to explicitly inform defendant that his state and federal sentences would run consecutively does not render the plea agreement involuntary." *United States v. Carver*, 160 F.3d 1266, 1268 (10th Cir. 1998); *see also United States v. Kerns*, 53 F. App'x 863, 866 (10th Cir. 2002) (defendant who was informed of four-year maximum penalty for each count understood by pleading guilty to two counts that he faced the possibility of an eight-year sentence). Several other circuit courts also have held that a district court is not required to inform a defendant who is pleading guilty to multiple counts that the court could impose consecutive sentences. *See, e.g.*, *United States v. Adams*, 955 F.3d 238, 245 (2d Cir. 2020) ("a district court's failure to advise a defendant that sentences could run consecutively does not render a guilty plea invalid"); *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996) (finding no error where district court advised defendant of the maximum imprisonment term for each count, thereby implicitly disclosing "the possibility of consecutive sentencing"); *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994) ("there is no requirement in [Rule] 11 that the court explicitly admonish a defendant that a sentence may be imposed consecutively"); *United States v. Hamilton*, 568 F.2d 1302, 1306 (9th Cir. 1978)

(explaining that informing defendant of maximum imprisonment terms for each of two counts "implicitly alerted [defendant] to the possibility of consecutive sentencing").

The Court also does not believe that Navarrete only said what his lawyer told him to say during the plea colloquy.  After Navarrete took a solemn oath to tell the truth, the magistrate judge explained to him that he was required to tell the truth, and if he failed to tell the truth, the government could prosecute him for perjury or false statement, and could use anything he said against him.  Civ. Doc. 13-2 at 4–5.  There is no evidence that Navarrete perjured himself during the plea colloquy.

There also is no evidence that the government breached the plea agreement or that the magistrate judge erred during the plea colloquy.  Although Navarrete alleges that the government agreed to "only seek a (25) year sentence during plea negotiations" and instead sought a 30-year sentence, Civ. Doc. 18 at 31, in fact—during both plea negotiations and in the plea agreement—the government agreed to recommend a sentence within the guideline range, *see* Civ. Doc. 13-1; Cr. Doc. 31 at 7.  The prosecutor's ultimate recommendation of a 25 to 30-year sentence was well below that guideline range and to Navarrete's benefit.  The government did not breach the plea agreement.

Navarrete's assertion that the magistrate judge incorrectly referred to the wrong pages of the plea agreement that listed the elements of the three crimes to which he pled guilty, Civ. Doc. 18 at 32, is simply wrong.  Navarrete's plea agreement listed the elements of the crimes to which he pled guilty at pages 4 and 5 of the plea agreement.  Cr. Doc. 31 at 4–5.  At the change of plea hearing, the magistrate judge correctly stated, "Your plea agreement, on Pages 4 and 5, the government sets forth all the elements it [w]ould have to prove beyond a reasonable doubt for you to be found guilty."  Civ. Doc. 13-2 at 11.  But even if the magistrate judge had made a

mistake, "[a] variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights."  FED. R. CRIM. P. 11(h).

Both the plea agreement and the magistrate judge's careful Rule 11 colloquy demonstrate that Navarrete knowingly and voluntarily waived his right to collaterally attack his conviction and sentence.

### 3.   *Miscarriage of Justice*

Navarrete does not address the third prong of the analysis—whether enforcing the waiver would result in a miscarriage of justice.  *See generally* Civ. Docs. 1, 18.  In this context, "a miscarriage of justice through enforcement of a waiver occurs *only* in one of four situations:  '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'"  *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327) (emphasis added); *see also United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) ("*Miscarriage of justice* . . . has a narrow meaning" in the context of an appellate waiver.).  Navarrete bears the burden of establishing that one of these four situations exists.  *Sandoval*, 477 F.3d at 1208.

Navarrete makes no suggestion, nor is there any evidence, that any of these situations are implicated here.  *See generally* Civ. Docs. 1, 18.  The district court did not rely on any impermissible factor in sentencing Navarrete.  *See* Cr. Doc. 13-4.  Navarrete does not claim that his counsel was ineffective in negotiating the waiver.  *See generally* Civ. Docs. 1, 18.  Indeed, the waiver he signed is standard, and he repeatedly represents in his reply that he would have taken the Rule 11(c)(1)(C) plea offer had he known that he could be sentenced to consecutive sentences.  The Court knows from experience that all plea agreements in this district contain

similar collateral attack waivers, and had Navarrete accepted the Rule 11(c)(1)(C) offer, it would

have contained a similar waiver.  With respect to whether the sentence exceeded the statutory

maximum, the district court imposed a sentence of 25 years in prison on counts 1 and 2, and 20

years on count 3, to run concurrently, which is within the statutory maximum sentence on each

count.  Finally, Navarrete does not argue that the waiver itself is "unlawful."  *See generally* Civ.

Docs. 1, 18.  He only argues the merits of his challenge to both his convictions and sentence.

However, as the Tenth Circuit has explained,

> Our inquiry is not whether the sentence is unlawful, but whether the waiver itself
> is unlawful because of some procedural error or because no waiver is possible. . . .
> An appeal waiver is not "unlawful" merely because the claimed error would, in
> the absence of waiver, be appealable.  To so hold would make a waiver an empty
> gesture.

*Sandoval*, 477 F.3d at 1208 (internal citations omitted).  "The whole point of a waiver . . . is the

relinquishment of claims *regardless* of their merit."  *United States v. Nguyen*, 235 F.3d 1179,

1184 (9th Cir. 2000) (emphasis in original).

Navarrete has not satisfied his burden of establishing that the waiver in this case was

unlawful or improper in any way.  This Court must determine the validity of the waiver without

reference to the merits of his underlying claims.  Navarrete points to no authority suggesting that

the waiver of his right to collaterally attack his sentence—a sentence within the statutory

maximum sentence—is itself unlawful.  Indeed, the Tenth Circuit has recognized that such

waivers are lawful and enforceable.  *See Cockerham*, 237 F.3d at 1181–83.  Enforcing the waiver

in this case would not constitute a miscarriage of justice.  Because Navarrete has waived his right

to collaterally attack his convictions and sentence, I recommend that the Court deny his motion

with respect to Ground 2 and Ground 4 because Navarrete waived his right to bring them.

B.      Ground 1:  Ineffective Assistance of Counsel

Although not all his claims are entirely clear, Navarrete alleges that his counsel was ineffective in multiple ways.  In his petition, he claims that his counsel was ineffective for (1) failing to conduct forensics on his phone, computer, and flash drive to determine when pictures were deleted; (2) failing to perform mental or psychological evaluation earlier and/or to evaluate his "standing" before he pled guilty; (3) failing to provide Navarrete enough time to consider the plea agreement; (4) failing to be adversarial enough and being too weak at sentencing; (5) failing to share full disclosure on conduct with the government to make it accept a 15-year sentence; (6) failing to object to the district judge's comments at the sentencing hearing; (7) failing to object to sentencing enhancements as unconstitutional and "unstatutorial"; (8) failing to comment on the production charge needing a "mens rea" for conviction or meeting the interstate nexus requirement; (9) being an "officer of the court" and therefore having a conflict.  Civ. Doc. 1 at 4.

In his reply, Navarrete expands on some of his ineffective assistance claims.[7]  To the extent that the Court can decipher them, he argues that his counsel should have conducted additional forensics on his phone, computer, and flash drive to develop mitigating evidence and show his remorse in having created the child pornography.  Civ. Doc. 18 at 4, 6.  He also argues that his attorney should have had the psychological evaluation done before he entered into the plea agreement, suggesting that the government might have offered a more beneficial plea agreement had it known that he was sexually abused himself.  *See id.* at 4–5.  He further argues that his attorney, either "advertently or inadvertently," withheld critical facts from him about the

_____

[7] Although the Court ordinarily does not consider claims raised for the first time in a reply, the Court granted the government an opportunity to address Navarrete's expanded claims in a surreply.  *See* Civ. Docs. 19–21.  The Court consequently will be more liberal in considering these expanded claims.

plea agreement, including the "fact" that he received no benefit from the agreement and the fact that all the sentencing enhancements were not listed in the plea agreement. *See id.* at 7–9. He claims that as a result, he was induced to sign the plea agreement by fraud. *See id.* at 9. He claims that the elements of the offense listed in the plea agreement were incorrect with regard to the *mens rea* required, and that his counsel failed to notice that the government could not meet all the elements. *See id*. at 10–12. Navarrete raises for the first time in his reply that the United States Probation Office ("USPO") somehow acted improperly in determining his sentencing guideline range, *see id.* at 12–14, and that his counsel was ineffective for not correctly calculating the sentencing guideline range and not informing him of the possibility of consecutive sentences before he pled guilty, *see id.* at 20.

To establish ineffective assistance of counsel, a petitioner must show (i) that his or her attorney's performance was deficient and (ii) that the deficiency caused him or her prejudice, meaning that there is a reasonable probability that the result would have been different but for his or her lawyer's unprofessional errors. *See United States v. Cruz*, 774 F.3d 1278, 1284–85 (10th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993). The first prong can be met if the petitioner establishes that his or her counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687–88. To meet *Strickland's* second prong, petitioner must show that counsel's deficient performance prejudiced him or her to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In the context of a defendant who pleaded guilty, the prejudice prong is modified slightly to focus on whether the constitutionally ineffective

performance affected the outcome of the plea process.  *Hill v. Lockhart*, 474 U.S. 52, 58–59

(1985).  Accordingly, the habeas petitioner who pleaded guilty must show "that there is a

reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty

and would have insisted on going to trial."  *Id.* at 59.

   In this case, however, there is an additional wrinkle.  Much of Navarrete's ineffective

assistance of counsel claims revolve around his counsel's miscalculation of the sentencing

guidelines range and his counsel's failure to advise him that he could be sentenced to

consecutive prison terms.  In other words, had he known that his potential total exposure was 80

years—not 30 under the statute, or 25 under the incorrectly calculated guidelines range—he

would have accepted the government's Rule 11(c)(1)(C) offer to 20 years in prison.  This is

essentially a *Lafler* claim:  "In these circumstances a defendant must show that but for the

ineffective advice of counsel there is a reasonable probability that the plea offer would have been

presented to the court (i.e., that the defendant would have accepted the plea and the prosecution

would not have withdrawn it in light of intervening circumstances), that the court would have

accepted its terms, and that the conviction or sentence, or both, under the offer's terms would

have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler v.*

*Cooper*, 566 U.S. 156, 164 (2012); *see also Williams v. Jones*, 571 F.3d 1086, 1089–94 (10th

Cir. 2009) (granting § 2254 relief to defendant convicted at trial of first-degree murder who

received ineffective assistance of counsel in rejecting plea offer that would have limited his

exposure to ten years in prison).

   A court presumes that counsel was effective, and "the burden rests on the accused to

demonstrate a constitutional violation."  *United States v. Chronic*, 466 U.S. 648, 658 (1984).

Further, a court may address the performance and prejudice prongs in any order and need not

address both if it concludes that the defendant failed to satisfy one of the two prongs.  *See*

*Strickland*, 466 U.S. at 700; *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

      None of Navarrete's ineffective assistance of counsel claims have merit, either because

he cannot show that his counsel's performance was deficient, or because he cannot show

prejudice, or both.  The Court addresses each of Navarrete's claims in turn.

      1.  *Failure to Perform Additional Forensics*

      Navarrete claims that his counsel should have conducted additional forensics on his

phone and computer and flash drive because additional forensics would have shown that there

were deleted pictures on these items.  *See* Civ. Doc. 1 at 4; Civ. Doc. 18 at 4.  He says that the

deleted pictures could have shown that he was remorseful, which would have been a mitigating

circumstance that might have made the government more inclined to offer him a better plea deal.

*See* Civ. Doc. 18 at 4.  As the government points out, however, the deleted pictures also could

show that he was hiding or destroying evidence, which is an aggravating circumstance.  *See* Civ.

Doc. 21 at 3.  Additionally, the government was aware that Navarrete had deleted pictures, *see*

*id.*, and this information presumably was considered when the government made the plea offers

it did.  Moreover, Navarrete does not claim that additional forensics would have shown that he

was innocent or had viable defenses to the charges; he only claims that he *might* have gotten a

better plea offer or lower sentence had additional forensics been performed.  *See* Civ. Doc. 18 at

4–6.  Navarrete cannot show that he was prejudiced by his counsel's failure to conduct additional

forensics on his phone, computer, and flash drive because he cannot show that there is a

reasonable probability that the outcome would have been different had the additional forensics

been performed.

2.   *Failing to Have Psychological Evaluation Completed Earlier*

Navarrete also claims that his counsel should have had the psychological evaluation completed earlier because it also might have convinced the government to offer a better plea deal.  *See* Civ. Doc. 18 at 4–5.  He claims that because the psychological evaluation showed that he himself was sexually abused when he was young, this also was a mitigating circumstance that his attorney could have used to negotiate a better plea deal.  *See id.* at 5.  But there is no evidence that the government would have offered Navarrete a better plea deal had it know that he also was sexually abused.  There also was no reason for Navarrete's lawyer to seek a psychological evaluation before sentencing as there was no issue regarding his competency or suggestion that he had any psychologically based defense.  Indeed, a psychological evaluation was not necessary to uncover the fact that Navarrete had been sexually abused; Navarrete himself knew this fact and disclosed it to the forensic evaluator who did the evaluation.  *See* Cr. Doc. 47-7 at 4.  He could have disclosed it to his attorney at any time.  Navarrete cannot show that his attorney was deficient in this regard, or that any deficiency prejudiced him.

3.   *Lack of Time to Consider Plea Agreement*

Navarrete does not say much about his allegation that he did not have enough time to consider his plea agreement.  *See* Civ. Doc. 1 at 4.  He does not claim that he would not have pled guilty had he had more time to consider the plea agreement.  Moreover, the evidence makes clear that after several months of receiving pre-indictment discovery and trying to negotiate a pre-indictment plea, *see* Cr. Docs. 12, 15, 21, 23, 26, the government made a written offer to Navarrete on February 7, 2018, Civ. Doc. 13-1.  Navarrete did not plead guilty until 15 days later.  Cr. Doc. 32.  Furthermore, during his change of plea hearing, he testified that he had enough time with his attorney to discuss his case, Civ. Doc. 13-2 at 13, that he had reviewed the

plea agreement in detail with his attorney, that his attorney had answered all of his questions to

his satisfaction, and that he was confident he understood "each and every term" of his plea

agreement, *see id.* at 10–11.  On these facts, Navarrete cannot show that he did not have enough

time with his attorney to consider the plea agreement, nor can he show that if he had had more

time, that the outcome would have been different.

4.   *Failing to be Adversarial Enough, Being Too Weak at Sentencing, and Whether
     Navarrete Received a Benefit from Plea Agreement*

Navarrete claims that his attorney was too weak, and that at sentencing, he should have

done more with the psychological evaluation, focused more on Navarrete's own childhood

sexual abuse, and challenged more of the sentencing enhancements in the presentence report.

*See* Civ. Doc. 1 at 4.  He says that his attorney should have offered an expert witness on the

psychological report at sentencing.  Civ. Doc. 18 at 4.  He also suggests that his plea agreement

is invalid because he received no benefit from the plea agreement.  *See id.* at 7.  None of these

claims have merit.

With respect to his complaints about his attorney not being adversarial enough or too

weak, Navarrete cannot show that his attorney's performance was deficient.  From the beginning

of the case, Navarrete made clear that he wanted his attorney to get him a favorable plea offer; he

did not contest his guilt, and he did not want to put the victims and family members through the

stress of going to trial.  *See* Civ. Doc. 13-3 at 1–2; *see also* Cr. Doc. 47-1 at 2 (Navarrete's letter

to district judge taking "full responsibility for [his] actions"); Civ. Doc. 13-4 at 14–15 (defense

lawyer explaining at sentencing hearing that Navarrete wanted to take responsibility and work

out a plea deal from the beginning); *id.* at 27–30 (Navarrete's allocution at sentencing hearing

stating that he takes "full responsibility for [his] actions").  Before Navarrete agreed to plead

guilty, his attorney met and spoke with him numerous times, he went over the government's

evidence with him and discussed the strengths and weaknesses of the government's case, and he

went over the two different plea options with Navarrete and discussed the options with him at

length. *See* Civ. Doc. 13-3. Navarrete chose the option that allowed him to seek a 15-year

sentence; this was the major benefit to the option he chose. *See id.*

Before sentencing, Navarrete's lawyer filed a 17-page sentencing memorandum that

asked the Court to vary downward from the sentencing guideline range and impose the minimum

mandatory sentence of 15 years in prison. Cr. Doc. 47. In the memorandum, Navarrete's lawyer

asked the Court to impose concurrent, rather than consecutive sentences. *Id.* at 5. He also

objected to the obstruction of justice enhancement. *Id.* at 5–6. He then went over many of the

relevant sentencing considerations, including the fact that Navarrete had been sexually assaulted

himself when he was 16, and he again asked the Court to vary downward and impose a sentence

of 15 years. *See id.* at 6–15. Navarrete's lawyer focused on Navarrete's remorse, his

cooperation with law enforcement, the fact that the psychological evaluation found that he was at

low risk for recidivism, and that he had worked hard and accomplished a lot in his life. *See id.*

He also argued that guideline range overstated the seriousness of Navarrete's offense as it

equated his offense with murder. *Id.* at 9. Several letters from family members and friends

advocating for a lenient sentence were attached to the memorandum, as was the psychological

evaluation. *See* Docs. 47-2 to 47-7. At the sentencing hearing, Navarrete's lawyer made many

of the same points. Civ. Doc. 13-4 at 10–27.

After Navarrete's lawyer's presentation, the Court granted many of his requests. The

Court sustained his objection to the obstruction of justice enhancement. *Id.* at 10. The Court

also agreed to impose concurrent sentences as opposed to consecutive sentences. *Id.* at 37. The

Court also agreed to a substantial variance, although it did not agree to a 15-year sentence. *Id.*

The Court varied downward from the sentencing range of 80 years to 25 years. *See id.* at 37, 44.
In doing so, the Court specifically noted that it had considered that Navarrete was sexually
molested when he was 16, that he had a history of depression, and that he was at low risk of re-
offending as determined by the psychological evaluation. *See id.* at 44–45, 47.

Based on this evidence, Navarrete cannot show that his counsel's performance was
deficient, or that any deficiency prejudiced him. Further, he chose the plea agreement that
allowed him to seek a sentence of 15 years. The fact that he did not receive the sentence he
hoped for does not show that he did not receive a benefit from the plea agreement. Moreover,
the government acknowledged before sentencing that the parties did not contemplate an 80-year
sentence when they negotiated the plea agreement. Cr. Doc. 49 at 2. The government then
asked the Court to vary downward and impose a sentence of 25 to 30 years, which was consistent
with the parties understanding of the maximum sentence the Court likely would impose. *Id.* The
Court agreed with the parties that the sentences should be concurrent and imposed a 25-year
sentence, which was consistent with Navarrete's original understanding of his plea agreement.
Navarrete cannot show that the outcome would have been different had his plea agreement
limited the government to seeking a guideline range sentence with the understanding that the
guideline range would not be more than 30 years.

5. *Failing to Convince the Government to Accept a 15-Year Sentence*

Navarrete asserts that his counsel was ineffective because "Attorneys never
shared[/]given full disclosure on conduct with Government which would [have] allowed 15
year[] sentence." Civ. Doc. 1 at 4. The Court interprets this statement as alleging that his
counsel was ineffective for failing to convince the government to agree to a 15-year sentence.
This claim fails because Navarrete cannot show that if the government had agreed to a 15-year

sentence, that the outcome would have been different.  The district judge specifically stated that

she was "not in agreement with a 15-year sentence."  Civ. Doc. 13-4 at 37.  Thus, even if the

government had agreed to a 15-year sentence in a Rule 11(c)(1)(C) plea agreement, there is no

evidence that the district judge would have accepted that plea agreement.

6.   *Failing to Object to District Judge's Comments at Sentencing*

Navarrete claims that his counsel was ineffective because he failed to object to the

District Judge's comments at sentencing that because he had a good education and a good job

and good intelligence, he should have known better.  *See* Civ. Doc. 1 at 4, 7.  As explained

below, however, these comments were not inappropriate and not objectionable.  Navarrete

therefore cannot show that his counsel's failure to object to these comments constituted deficient

performance.

7.   *Failing to Object to Sentencing Enhancements as Unconstitutional and "Unstatutorial"*

Navarrete argues that his counsel was ineffective for failing to object to the sentencing

enhancements in the presentence report as unconstitutional or "unstatutorial."  Civ. Doc. 1 at 4.

Navarrete, however, does not explain how any enhancement was unconstitutional or how any

enhancement violated any statute.  *See id.*; *see also* Civ. Doc. 18 at 8–9.  Moreover, the Supreme

Court has held that advisory guideline enhancements that do not raise either the minimum

mandatory sentence or the maximum sentence are constitutional.  *See United States v. Booker*,

543 U.S. 220, 259 (2005) ("[W]ithout this provision [of the Guidelines statute]—namely, the

provision that makes the relevant sentencing rules mandatory and imposes binding requirements

on all sentencing judges—the statute falls outside the scope of *Apprendi's* requirement."

(ellipsis, brackets, and internal quotation marks omitted)); *cf. Alleyne v. United States*, 570 U.S.

99, 103 (2013) (holding that any fact that increases the mandatory minimum sentence is an

element that must be submitted to the jury); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)

(holding that any fact (other than the fact of a prior conviction) that increases sentence beyond

statutory maximum must be submitted to the jury).  Navarrete has not shown that his counsel

failed to raise any meritorious objections to the enhancements applied in the presentence report.

His counsel's performance therefore was not deficient.

> 8. *Failing to Comment on Purportedly Incorrect Statement in the Plea Agreement Regarding Mens Rea Requirement*

Navarrete argues that his counsel was ineffective for failing to object to the elements

listed for the production count (count 2), specifically with respect to the *mens rea* portion of that

count.  Civ. Doc. 1 at 4; Civ. Doc. 18 at 10–12.  He asserts that the statute, 18 U.S.C. § 2251(a),

requires that the government prove that a person who has produced child pornography "knows or

has reason to know that such visual depiction *will* be transported or transmitted using any means

of interstate or foreign commerce," *and also* that "the visual depiction was produced or

transmitted using materials that have been mailed, shipped, or transported in or affecting

interstate or foreign commerce by any means," because there is no "or" between these two

clauses.  Civ. Doc. 18 at 12.  The Tenth Circuit, however, has held to the contrary.  *See, e.g.*,

*United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1269 (10th Cir. 2005) (defendant's local

production of pornographic images of child—where photos never crossed state lines, were not

stored on the internet, and there was no evidence that defendant intended to transmit the

images—could be found guilty under 18 U.S.C. § 2251(a) because he created the images using

materials that had been mailed, shipped, and transported in interstate and foreign commerce);

*United States v. Hernandez Rodriguez*, 845 F. App'x 743, 744 (10th Cir. 2021) (unpublished)

("Under 18 U.S.C. § 2251(a), a defendant may be convicted for causing a minor to engage in

sexually explicit conduct for the purpose of creating a visual depiction of that conduct 'if that

visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer'"; government "relied solely on the origin of the production materials to meet the nexus requirement"). In short, and as explained in the government's surreply, *see* Civ. Doc. 21 at 5–6, the plea agreement correctly stated the elements of the production count (count 2). Navarrete's lawyer was not ineffective for failing to object to or comment on the correct statement of the elements in the plea agreement.

9. *Allegation that Attorney had a Conflict Because Attorneys are Officers of the Court*

Navarrete appears to argue that his lawyer had a conflict because he is an "officer of the court." All lawyers, however, are officers of the court. This role imposes ethical obligations on lawyers, such as requiring them to provide full and accurate information to the court, and prohibiting them from knowingly making a false representation to the court. *See, e.g.*, *United States v. Perez-Gomez*, 638 F.2d 215, 217 (10th Cir. 1981) ("As an officer of the court an attorney may not knowingly make a false statement to the court or fail to disclose what he [or she] is required by law to reveal."). The Court is unaware of any case that holds that this duty to the Court creates a conflict between a client and his lawyer, and Navarrete does not explain how his attorney's role as an officer of the Court created a conflict. Navarrete's lawyer was not ineffective because he was an officer of the court.

10. *Incorrect Sentencing Guideline Calculation and "Fraudulent" Inducement to Enter Plea Agreement*

Navarrete argues that the parties' incorrect calculation of the guidelines and his lawyer's failure to notify him about all the sentencing enhancements and the possibility that he could be sentenced to consecutive sentences fraudulently induced him to accept the plea agreement he

chose.  *See* Civ. Doc. 18 at 8–9, 16–21, 38–39.  He asserts that had he known all the facts, he

would have chosen the Rule 11(c)(1)(C) plea agreement that bound the parties to a 20-year

sentence rather than the plea agreement that allowed him to seek a 15-year sentence.  *See id.* at

39.  In essence, he argues that his lawyer was ineffective for miscalculating the guidelines so

egregiously, for failing to advise him that the Court could order him to serve consecutive

sentences, for failing to advise him that the maximum penalty for the three offenses was 80 years

if the sentences were imposed consecutively, and for failing to strongly advise him to take the

20-year 11(c)(1)(C) plea agreement.  *See id.* at 16, 20, 39.  This essentially is a *Lafler* claim, and

Navarrete must show a reasonable probability that the plea offer would have been presented to

the Court, that the Court would have accepted it, and that the sentence would have been less

severe than the sentence actually imposed.  *See Lafler*, 566 U.S. at 164.

　　　As to the claim that he was "fraudulently induced" to enter the plea agreement, this is

categorically false.  The prosecutor made clear that her estimate of the guideline range was only

an estimate, and was not binding.  Civ. Doc. 13-1.  Further, the plea agreement made clear that

the Court could reach an advisory guideline range different than the one Navarrete expected, Cr.

Doc. 31 at 8, and Navarrete testified at his change of plea hearing that he understood that the

Court could impose a sentence that was harsher than the one he was hoping for, Civ. Doc. 13-2

at 11–13.  Navarrete was not induced to enter his plea agreement by fraud.

　　　Navarrete also claims that had he known that he was facing a maximum penalty of 80

years rather than 30, and that his guideline sentencing range was 80 years instead of 25, he

would have taken the 20-year 11(c)(1)(C) plea offer.  At the sentencing hearing, Navarrete's

lawyer admitted that he did not tell Navarrete that the Court could impose consecutive sentences,

Civ. Doc. 13-4 at 11–12; Navarrete "was under the assumption that he was going to be looking

anywhere from 15 to 25 years." *Id.* at 11. The lawyer further stated—before the Court announced its sentence—that he wrote a letter to the prosecutor asking her if she would offer the 20-year sentence that she originally offered because Navarrete "would take that in a heartbeat." *Id.* at 12. This gives some credence to Navarrete's claim that he would have chosen the 20-year plea had he known his total exposure and had a more accurate estimate of the sentencing guideline range. However, "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570–71 (10th Cir. 1993). Further, given that the Court correctly informed Navarrete of the maximum penalties he faced on each count to which he was pleading guilty, and, by implication, that he was facing a total of 80 years in prison, his counsel's failure to specifically advise him that he could face consecutive sentences— even if it constituted deficient performance—likely did not prejudice him. But even if the Court assumes that Navarrete would have accepted the 20-year 11(c)(1)(C) offer had he been correctly advised, he cannot show a reasonable probability that the district judge would have accepted its terms.

Navarrete assumes that if he would have accepted the government's 20-year plea offer, the Court would have accepted the plea agreement. However, Federal Rule of Criminal Procedure 11(c)(5) permits the Court to reject an 11(C)(1)(c) plea agreement. If the Court does so, it must tell the parties that it is rejecting the plea agreement, tell the defendant that he or she can withdraw the plea, and tell the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably than provided for in the plea agreement. *See* FED. R. CRIM. P. 11(c)(5). Furthermore, in deciding whether to accept an 11(c)(1)(C) plea agreement and impose a sentence consistent with that agreement, the Court still must consider the guideline sentencing

range and every other factor listed in 18 U.S.C. § 3553(a).  In other words, if Navarrete had

accepted the 20-year 11(c)(1)(C) offer, the Court still would have considered the presentence

report, which still would have shown that the advisory guideline range was 80 years in prison.

The Court also would have considered all the other information in the report and at sentencing

regarding Navarrete's conduct and the impact it had on his victims.

Here, the district judge had an opportunity to impose a 15-year sentence, and she

specifically rejected that sentence.  Civ. Doc. 13-4 at 37.  She also had the opportunity to impose

a 20-year sentence, but she did not do so.  She did not choose a 20-year sentence even though

she knew that Navarrete had been offered a 20-year 11(c)(1)(C) plea agreement, and even though

she knew that he had not been advised of the correct guideline sentencing range or that the

sentences could be imposed consecutively.  *See id.* at 11–12.  The district judge instead imposed

a sentence of 25 years.  Thus, it is not reasonably probable that the Court would have accepted

the 20-year 11(c)(1)(C) agreement even if Navarrete had agreed to it.  *See Henry v. United*

*States*, No.1:20-cv-00010-JCH-KK, 2021 WL 698721, at *9 (D.N.M. Feb. 23, 2021)

(unpublished) ("Given the Court's express rejection of the very sentence the November 2017

plea offer proposed, as well as the PSR, which indicated a guideline sentence of life

imprisonment, . . . [movant] cannot show a reasonable probability that the Court would have

accepted the plea had he agreed to the Government's November 2017 offer."); *see also Lombard*

*v. United States*, 44 F. Supp. 3d 14, 23 (D.D.C. 2014) (movant failed to show prejudice where

court was unwilling "to adopt a low or mid-range sentence" at sentencing and it was therefore

"not reasonably probable the [c]ourt would have endorsed the same outcome simply because it

was presented by means of a binding plea agreement").  Because Navarrete cannot show that it is

reasonably probable that the Court would have accepted a 20-year 11(c)(1)(C) agreement, he

cannot establish that his attorney's deficiencies caused any difference in the outcome of his sentence.

               11. *Allegation that the United States Probation Office Acted Improperly*

Navarrete alleges that granting the United States Probation Office—which he believes is an arm of the "district attorney's" office—a role in determining the sentence is unconstitutional because it gave a third party the ability to decide the length of his sentence. *See* Civ. Doc. 18 at 12–13. This allegation is without merit. In fact, the USPO is an arm of the Court—not the U.S. Attorney's Office—and is charged with, among other duties, preparing the presentence report and calculating the sentencing guideline range. *See United States v. Huffman*, 146 F. App'x 939, 944 (10th Cir. 2005) (unpublished) (citing 18 U.S.C. § 3602(a)); FED. R. CRIM. P. 32(c)(1)(A), (D). The final calculation, however, is left to the Court, FED. R. CRIM P. 32(i)(3), as is the ultimate sentence. The parties may object to anything in the report that they believe is incorrect, FED. R. CRIM. P. 32(f), which Navarrete did in this case, *see* Cr. Doc. 45; Cr. Doc. 47 at 5–6; Cr. Doc. 48. This process was explained in the plea agreement and at the change of plea hearing, and Navarrete testified that he understood how the process worked. *See* Cr. Doc. 31 at 4, 8; Civ. Doc. 13-2 at 11–13. And finally, although the recommended guideline sentence was 80 years, the district judge imposed a sentence of 25 years, which makes clear that it was the judge, not the USPO, who determined the actual sentence. Navarrete cannot show that the USPO acted improperly.

    C.    <u>Ground 3:  Judicial Misconduct</u>

Navarrete claims that the district judge's statement at sentencing—that because Navarrete had a good education and a good job and good intelligence, he should have known better—

shows that the court was prejudiced against him.[8]  Civ. Doc. 1 at 7.  This claim is wholly without

merit.

   "The Due Process Clause entitles a person to an impartial and disinterested tribunal in

both civil and criminal cases."  *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).  To

demonstrate a due process violation based on judicial bias, Navarrete must show either actual

bias or an appearance of bias.  *See Phelps v. Hamilton*, 122 F.3d 1309, 1323 (10th Cir. 1997).  A

judge must recuse herself "if sufficient factual grounds exist to cause a reasonable, objective

person, knowing all the relevant facts, to question the judge's impartiality."  *United States v.*

*Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000).  The judge's actual state of mind or prejudice is

not at issue.  *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993).  "The standard is purely

objective," and "[t]he inquiry is limited to outward manifestations and reasonable inferences

drawn therefrom."  *Id*.  Ordinarily, when a judge's words or rulings are motivated by events

originating within the context of judicial proceedings, they are insulated from charges of bias.

*Liteky v. United States*, 510 U.S. 540, 554–56 (1994).  Although a judge's remarks may be

"critical," "disapproving," or "hostile" to a party, usually those remarks will not support a charge

of bias.  *Id*. at 555.

   Here, the district judge was required to consider "the nature and circumstances of the

offense and the history and characteristics of the defendant" in determining what sentence to

impose.  18 U.S.C. § 3553(a)(1).  In doing so, and before announcing Navarrete's sentence, the

Court commented:

---

[8] In his reply, Navarrete expands this claim to include allegations that the district judge erred in
failing to notice purported errors in his plea agreement.  *See* Civ. Doc. 18 at 23–25.  A legal error
is not misconduct and does not show bias.  Any claims that the district judge erred in sentencing
him or in accepting his plea agreement are included in his collateral attack waiver.  Because
Navarrete waived his right to bring these claims, the Court will not consider them.

> Your case is a difficult one to really comprehend because you don't come to the Court like many other defendants do with a history of drug addiction, or a history of alcohol addiction, or a situation where families, their families were so dysfunctional you could probably predict that some defendants would be in a sentencing hearing some day. That is not what your background and history tells me about you.
>
> You are someone who should never be in a situation like this. You are someone who should never have committed crimes like you committed. You have no addiction in your history, whether, no drug addiction, no alcohol addiction, no substance is what I mean when I say you don't have any addictions in your history.
>
> You have a phenomenal education. You have a very enviable job history. The life that you led was one that leaves me completely puzzled as to why, why you made the decisions you made.
>
> So your history is almost like a double-edged sword. I mean, it is what your attorney relies on in suggesting that you should have a lower sentence, but it is also this history that causes me to think there is every reason in the world to know that you should have known better.
>
> That makes it even more disappointing that you would get involved in conduct like this.

Doc. 13-4 at 43–44. These comments would not cause a reasonable person to question the district judge's impartiality. She merely was commenting on the fact that many defendants in this district commit crimes that can be attributed, at least in part, to substance abuse issues, poverty, and lack of education. Navarrete, however, had a good job working at Intel, was working on getting his Ph.D., and seemingly threw it all away by committing these crimes. Although the district judge's remarks were critical and disapproving, they do not support Navarrete's claim that she was biased.

## IV.    **Recommendation**

Navarrete knowingly and voluntarily waived his right to bring his Ground 2 and Ground 4 claims in his plea agreement. He has not demonstrated that this waiver was unlawful or improper in any way. Thus, enforcing the waiver would not constitute a miscarriage of justice. I

therefore recommend that the Court DENY Navarrete's motion on these two grounds because the terms of Navarrete's plea agreement bar these claims.

With respect to Ground 1—ineffective assistance of counsel—Navarrete cannot show that his counsel's performance was deficient, or that any deficiency caused him prejudice.  With respect to Ground 3—judicial misconduct—Navarrete cannot show that the district judge was biased or engaged in any misconduct.  I recommend that the Court DENY Navarrete's motion on these two grounds because they are without merit.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge